**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| TARIK JAAFAR, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| vs. | ) Civil Action No. 1:24-01714 (MSN/LRV) |
| | ) |
| GREENE, *et al.,* | ) |
| | ) |
| *Defendants.* | ) |
| _____ | ) |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS FCI PETERSBURG,
GREENE, WILLIAMS, AND CROSS'S MOTION TO DISMISS</u>**

**Erik S. Siebert**
United States Attorney

**Raul A. Ruiz**
Assistant U.S. Attorney

**Table of Contents**

INTRODUCTION ...................................................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ............................................................... 2

LEGAL STANDARDS ............................................................................................................. 3

   I.    12(b)(1) ............................................................................................................. 3

   II.   12(b)(4) ............................................................................................................. 3

   III.  12(b)(6) ............................................................................................................. 4

ARGUMENT ............................................................................................................................. 5

   I.    This Court Lacks Jurisdiction if Plaintiff Alleged a Cause of Action under the
FTCA ........................................................................................................................................ 5

   II.   Plaintiff Cannot Bring a *Bivens* Claim Against FCI Petersburg Because
*Bivens* is Exclusively a Remedy Against Individual Officials ................................. 7

   III.  Plaintiff's Claims Against Dr. Williams Must be Dismissed because he Has
Not Been Served. ..................................................................................................................... 8

   IV.  Plaintiff's *Bivens* Claims Are Not Cognizable. ............................................. 8

      A.    Plaintiff's Claims Present a New Context Distinct from Prior Bivens
Caselaw. ....................................................................................................................... 12

      B.    Special Factors Counsel Against Implying New Bivens Claims Here. ... 14

   V.   Defendants are Entitled to Qualified Immunity. ........................................ 16

      A.    Use of Force While on Restraints. ............................................................ 17

CONCLUSION ....................................................................................................................... 21

## **INTRODUCTION**

In a sparse Amended Complaint, Plaintiff claims the two Defendant FCI Petersburg Lieutenants, Joseph Greene and Aaron Cross, along with two doctors, tortured him on a restraint chair and on four points after being mistakenly arrested. Amend. Compl. at 4.

Whether construed under the Federal Tort Claims Act (FTCA) or *Bivens*, Plaintiff's claim cannot survive a motion to dismiss. To the extent Plaintiff seeks to bring an FTCA claim, he failed to exhaust his administrative remedies. Further, to the extent that Plaintiff instead seeks to bring a *Bivens* claim, as multiple courts have recognized in the wake of the Supreme Court's watershed decision in *Abbasi v. Ziglar*, 582 U.S. 120 (2017), there is no *Bivens* remedy available for a federal inmate's Eighth Amendment right to be free from cruel and unusual punishment—especially under these circumstances. Given the new context Plaintiff's claims present, and the many special factors counseling hesitation, this Court should deny Plaintiff's request to expand the existing scope of the "disfavored" implied remedy of *Bivens*.

In addition to there being no available *Bivens* remedy for Plaintiff's claims, the BOP employees are entitled to qualified immunity. Put simply, it would not be clear to a reasonable federal officer confronted with the particularized circumstances pled in Plaintiff's complaint that he or she would be violating Plaintiff's Eighth Amendment rights. For all these reasons, detailed below, Plaintiff's Amended Complaint should be dismissed.

1

## PROCEDURAL AND FACTUAL BACKGROUND[1]

Plaintiff filed his initial *pro se* Complaint in this Court on September 27, 2024. Dkt. 1. That same day, Plaintiff moved the Court for leave to proceed *in forma pauperis*. Dkt. 4. The Court denied this motion, dkt. 7, but upon renewing his motion on December 02, 2024, the Court granted Plaintiff leave to proceed *in forma pauperis*. Dkt. 13. Plaintiff filed his Amended Complaint on December 18, 2024. Dkt. 7. Summonses issued and Lt. Cross and FCI Petersburg were served on April 21, 2025. Dkt. 18. Lt. Greene was served on April 23, 2025. Dkt. 25. Defendants Heck and Williams have not been served. Dkt. 19. After two motions for extension of time, the Court ordered Defendants, including individual capacity defendants who had been served, to file a response to Plaintiff's Amended Complaint by August 14, 2025. Dkt. 24.

In his Amended Complaint, Plaintiff alleges Lieutenant Greene, Lieutenant Cross, Dr. Heck, Dr. Williams, and FCI Petersburg "tortured [him] on [a] restraint chair and on 4 points, while [he] was under [their] control when [he] was mistakenly arrested." Amend. Compl. at 4. Plaintiff contends he sustained "serious medical and mental health damages along with permanent disability" worth $30 million. *Id.*

---

[1] Consistent with the standard governing the adjudication of motions to dismiss brought pursuant to Federal Rule 12(b)(6), this factual background assumes the truth of the non-conclusory factual averments contained within Plaintiff's complaint. *See, e.g., Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011). As such, the listing of a particular allegation here should not indicate that Defendants concur with that allegation.

## LEGAL STANDARDS

### I.     12(b)(1)

Federal district courts are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction over the subject matter of the suit. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1994). One way to challenge subject matter jurisdiction through a Rule 12(b)(1) motion is by asserting that a complaint simply fails to allege facts upon which subject-matter jurisdiction can be based. See *Adams v. Bain*, 697 F. 2d 1213, 1219 (4th Cir. 1982). Alternatively, a Rule 12(b)(1) motion may challenge subject matter jurisdiction by asserting that, as a factual matter, the plaintiff cannot meet his burden of establishing a jurisdictional basis for the suit. See id. Under this approach, to determine whether jurisdiction exists, a trial court may consider evidence extrinsic to the complaint. Id. The burden of proving subject matter jurisdiction rests with plaintiff. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

### II.     12(b)(4)

Under the Federal Rules, a plaintiff must effectuate service upon the defendants in compliance with the applicable rule of civil procedure. *See Danik v. Hous. Auth. of Balt. City*, 396 F. App'x 15, 16 (4th Cir. 2010). Once a defendant challenges the sufficiency of the process and the service of process, "the burden of establishing

validity of service [and process] under Federal Rule of Civil Procedure 4 shifts to the plaintiff." *Sanyal v. Toyota Motor Corp.*, 2014 WL 4925842, at *1 (E.D. Va. Sept. 30, 2014).

### III.    12(b)(6)

A complaint should be dismissed for failure to state a claim upon which relief may be granted if the plaintiff fails to meet his obligation to provide the grounds for entitlement to relief. *Twombly, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; rather, the plaintiff must allege facts that are sufficient "to state a claim to relief that is *plausible on its face*." *Twombly*, 550 U.S. at 555, 570 (emphasis added).

While it is true that the Court must "liberally construe a *pro se* litigant's complaint," *Laber v. U.S. Dep't of Defense*, 2021 WL 5893293, at *2 (E.D. Va. Dec. 13, 2021) (quoting *Laber v. Harvey*, 438 F.3d 404, 413, n.3 (4th Cir. 2006)), the liberal pleading standard does not "excuse a clear failure in the pleadings to allege a federally cognizable claim." *Id.* (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990)).

## ARGUMENT

### I. This Court Lacks Jurisdiction if Plaintiff Alleged a Cause of Action under the FTCA

Plaintiff's Amended Complaint does not indicate under what statute or theory Plaintiff seeks relief, as such, it fails to state a claim for which the Court can grant relief. Plaintiff seeks $30 million in money damages from Defendants Lieutenants Greene and Cross, two doctors, and FCI Petersburg, a federal correctional institution. However, the face of the Amended Complaint does not allege what statutes or rights, if any, these individuals violated. Plaintiff's failure to state any claim whatsoever is reason enough to dismiss the Amended Complaint.

If, reading the Amended Complaint liberally, this Court construes Plaintiff's claim as an FTCA claim, the Court lacks jurisdiction because Plaintiff did not exhaust his administrative remedies. The FTCA bars a plaintiff from bringing a claim against the United States until he has "first presented the claim to the appropriate Federal agency and [the] claim [has] been finally denied by the agency . . . ." *See* 28 U.S.C. § 2675(a). "It is well-settled that the requirement of filing an administrative claim is jurisdictional and may not be waived." *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *see also, e.g.*, *Xiteng Liu v. U.S. Citizenship and Immigration Servs., Tx. Serv. Ctr.*, 317 F. App'x 361, 362 (per curiam) (4th Cir. 2009) ("Failure to exhaust administrative remedies must result in dismissal of the lawsuit for want of jurisdiction."). "Precisely because" the FTCA is a waiver of sovereign immunity, plaintiffs "must file an FTCA action in careful compliance with its terms." *Kokotis v. U.S. Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000).

5

An administrative claim is properly presented when the appropriate agency receives "an executed Standard Form ("SF") 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death." 28 C.F.R. § 14.2(a). The SF 95 or the equivalent thereof must give adequate notice to the agency so that it can properly investigate the underlying incident in the administrative claim to assess its liability or defend itself. *See, e.g., Belton v. United States*, 2016 WL 3913703, at *3 (D.S.C. July 20, 2016).

Here, Plaintiff has not exhausted his administrative remedies. A review of the Federal Bureau of Prison's (BOP) databases of administrative claims revealed that there is no record of Plaintiff ever having presented an administrative tort claim to the agency. Exhibit A, Declaration of Jonathan Benimana.

Where a plaintiff has failed to exhaust his administrative remedies before filing suit under the FTCA, this Court—in accordance with the FTCA's provisions—has consistently dismissed such claims for lack of subject matter jurisdiction. *See, e.g., Brown v. United States*, 2021 WL 1876129, at *4 (E.D. Va. May 10, 2021) (dismissing FTCA claim because plaintiff failed to exhaust his administrative remedies); *Antwine v. United States*, 2018 WL 4390728, at *2 (E.D. Va. Sept. 12, 2018) (same); *Ball v. United States*, 2015 WL 256532, at *3 (E.D. Va. Jan. 20, 2015) (same); *Lewis v. Marine Corps*, 2012 WL 6623037, at *3-4 (E.D. Va. Dec. 18, 2012) (same); Mor v. United States, 2007 WL 1655346, at *2-3 (E.D. Va. June 6, 2007) (same); *Whitney v. United States*, 2009 WL 9130455, at *1 (E.D. Va. July 28, 2009); see also

*Patock v. Fox News Television Channel*, 2012 WL 695892, at *3 (E.D. Va. Mar. 1, 2012) ("[W]ithout a properly presented administrative claim, the Court lacks subject matter jurisdiction over [plaintiff's] tort claims"). Like the plaintiffs in these cases, Plaintiff did not exhaust his administrative remedies before filing his complaint in this matter. Accordingly, to the extent that Plaintiff's claim is construed as one brought under the FTCA, that claim should be dismissed.

## II.    Plaintiff Cannot Bring a *Bivens* Claim Against FCI Petersburg Because *Bivens* is Exclusively a Remedy Against Individual Officials

Given Plaintiff seeks monetary damages against named individual officials and alleges he was tortured, the remainder of this memorandum will assume Plaintiff's claim is a *Bivens* claim brought under the Eight Amendment. At the outset, Plaintiff's claim against Defendant FCI Petersburg should be dismissed. The Supreme Cout has explicitly declined to allow *Bivens* claims against federal agencies. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001). "The purpose of *Bivens*," the Court reasoned, "is to deter the officer, not the agency." Extending it in such a way "would mean the evisceration of the *Bivens* remedy." *F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994). The Fourth Circuit has likewise refused to allow plaintiffs to bring a *Bivens* case against the BOP. *Ruiz v. Fed. Bureau of Prisons*, 481 F. App'x 738, 740 (3d Cir. 2012). By naming a federal correctional facility as a defendant, Plaintiff has failed to state a *Bivens* claim as to FCI Petersburg.

### III.    Plaintiff's Claims Against Dr. Williams Must be Dismissed because he Has Not Been Served.

Pursuant to Federal Rule 4, in order to effectuate service on a federal employee in his or her individual capacity "for an act or omission occurring in connection with duties performed on the United States' behalf . . . a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)." Fed. R. Civ. P. 4(i)(3). Defendant Williams has not been served.[2] Indeed, the docket only reflects that individual defendants Greene and Cross have been served and that the summons as to Williams has been returned unexecuted. *See* Dkt. No. 17-19. Accordingly, because Defendant Williams has not been served as of now, nearly eleven months later, Plaintiff's claims against him should be dismissed.

### IV.    Plaintiff's *Bivens* Claims Are Not Cognizable.

To the extent that Plaintiff's claim is construed as a *Bivens* claims, it should be dismissed at the outset because, given more recent Supreme Court and Fourth Circuit authority, this Court cannot extend *Bivens* to the new circumstances presented here.

The history of *Bivens* is undoubtedly familiar to this Court, but bears repeating to explain why no such implied cause of action exists here. In 1971, *Bivens* "broke new ground" by recognizing, without any statutory authorization from Congress, an

---

[2] Defendant Heck also has not been served. Because the undersigned counsel has not yet obtained representation authority for this former BOP employee, the undersigned counsel is not bringing this motion on this defendant's behalf.

implied cause of action for damages against federal agents who allegedly violated the Fourth Amendment by conducting a warrantless search and seizure of an individual "in his own home." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020); *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). "In the decade that followed," the Supreme Court recognized two other limited circumstances in which there were such implied causes of action. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Those other circumstances are:

> In *Davis v. Passman*, 442 U.S. 228 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The [Supreme] Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. And in *Carlson v. Greene*, 446 U.S. 14 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The [Supreme] Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment.

*Abbasi,* 137 S. Ct. at 1854–55 (citations omitted). In the last 50 years, thus, "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Id.* at 1855; *see also Hernandez*, 140 S. Ct. at 742–43.

Consequently, "expanding the *Bivens* remedy is . . . a 'disfavored' judicial activity." *Abbasi,* 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675)). So much so that the Supreme Court has observed that, if the trio of *Bivens* cases had been decided today, "it is doubtful" that the same result would have been reached. *Hernandez*, 140 S. Ct. at 742–43. The Fourth Circuit has heeded the Supreme Court's warning on multiple, recent occasions—especially in the context of federal inmates seeking relief

against prison officials. *See, e.g.*, *Mays v. Smith*, 70 F.4th 198, 203–07 (4th Cir. 2023) (rejecting *Bivens* remedy for federal inmate bringing Fifth Amendment claims for procedural due process and race discrimination); *Bulger v. Hurwitz*, 62 F.4th 127, 137–42 (4th Cir. 2023) (holding it would improperly extend *Bivens* to allow federal inmate's estate to bring Eighth Amendment claim for BOP's alleged failure to protect him from another inmate's fatal attack); *Tate v. Harmon*, 54 F.4th 839, 841–42 (4th Cir. 2022) (rejecting request to extend *Bivens* to claims of "degenerate" conditions of confinement in violation of the Eighth Amendment); *Earle v. Shreves*, 990 F.3d 774, 778–81 (4th Cir. 2021) (declining to extend *Bivens* to allow federal inmate to bring a claim of retaliatory detention under the First Amendment).

Because a *Bivens* remedy is almost always "disfavored," the creation of a new *Bivens* claim outside the very specific circumstances under which the Supreme Court (and *only* the Supreme Court) has previously recognized requires satisfaction of a strict two-step test. *See Abbasi,* 137 S. Ct. at 1857–58. Under this two-step test,[3] the Court must first consider whether a case will extend a *Bivens* remedy into a "new context." *Id.* at 1857 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). "If the case is different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court, then the context is new." *Id.* at 1859.

---

[3] However, the Supreme Court has newly signaled that while its "cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022).

"To present a new context, 'a radical difference is not required.'" *Annappareddy v. Pascale*, 996 F.3d 120, 133 (4th Cir. 2021) (quoting *Tun-Cos v. Perrotte*, 922 F.3d 514, 522 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020)). To illustrate, the Supreme Court "has provided several examples of 'meaningful differences,' some of which are quite minor . . . ." *Tun-Cos*, 922 F.3d at 523. They include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* (quoting *Abbasi*, 137 S. Ct. at 1859–60). If the case does not present a new context, then the *Bivens* remedy is available, and there is no need to proceed to the second step. *Annappareddy*, 996 F.3d at 133 (citing *Tun-Cos*, 922 F.3d at 522–23); *see also Abbasi*, 137 S. Ct. at 1857.

If a case does present a new context, then the second step requires the Court to evaluate whether there are "special factors counselling hesitation" to extend *Bivens* "in the absence of affirmative action by Congress." *Annappareddy*, 996 F.3d at 133 (citing *Tun-Cos*, 922 F.3d at 523); *see also Abbasi*, 137 S. Ct. at 1857. While the Supreme Court has "not attempted to 'create an exhaustive list' of factors that may provide a reason not to extend *Bivens*," it has nonetheless stressed that "'central to [this] analysis' are 'separation-of-powers principles.'" *Hernandez*, 140 S. Ct. at 743 (quoting *Abbasi*, 137 S. Ct. at 1857). Among other things, therefore, a court must

11

"consider the risk of interfering with the authority of the other branches" and "ask whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy,' and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (internal citation omitted) (quoting *Abbasi*, 137 S. Ct. at 1858). The Court has repeatedly stressed in this regard "that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure,'" and that the "uncertainty of the systemwide consequences of recognizing a cause of actions under *Bivens*" is another special factor precluding the expansion of the *Bivens* remedy. *Egbert*, 142 S. Ct. at 1804 (quoting *Abbasi*, 137 S. Ct. at 1858).

As discussed below, Plaintiff's claim here does not pass the two-step test for implying a new *Bivens* remedy. Plaintiff's likely Eighth Amendment claim here would represent an extension of existing Supreme Court *Bivens* caselaw. In addition, there are special factors weighing against extending any *Bivens* remedy to these circumstances.

## A.    Plaintiff's Claims Present a New Context Distinct from Prior Bivens Caselaw.

Construing Plaintiff's Amended Complaint liberally, Plaintiff may be attempting to bring an Eighth Amendment claim under *Bivens*, but even the limited allegations he presents make clear that this claim unquestionably presents a new context from those found in *Bivens*, *Carlson*, or *Davis* and therefore would represent an expansion of the *Bivens* remedy.

Although the Supreme Court, in *Carlson*, created a *Bivens* remedy under the Eighth Amendment against federal prison officials, that was in the specific context of prison official's deliberate indifference to an inmate's medical needs.[4] *See Carlson*, 446 U.S. at 16. In contrast, here, Plaintiff likely asserts that his Eighth Amendment right to be free from cruel and usual punishment was violated based on his interactions with correctional officers and staff and his placement in restraints. The underlying conduct is also different. In *Carlson*, the plaintiff died after prison officials failed to treat his asthma condition properly, including allegedly inducing drugs that made his asthma attack more severe and delaying his transfer to a hospital. *Id.* at 16 n.1. Although Plaintiff's allegations in this case are exceedingly limited, even Plaintiff's one-sentence claim makes clear the difference between this case and *Carlson*. Here, Plaintiff alleges, without elaborating, he was "tortured" while on a "restraint chair and on 4 points." Amend. Compl., dkt. 15, at 4. Unlike the plaintiff in *Carlson*, Plaintiff does not allege that he sought medical attention or was denied medical treatment anywhere in his Amended Complaint. Rather, his claim appears to center on the fact that he had been restrained in a particular way. As the Fourth Circuit recently emphasized in the prison setting, "a new context may arise if *even one* distinguishing fact has the potential to implicate separation of powers considerations." *Tate*, 54 F.4th at 846 (emphasis in original).

And as such, courts within the Fourth Circuit have similarly found cases

---

[4] Plaintiff's presumed Eighth Amendment claim here obviously bears no resemblance to either *Davis* or *Bivens*—which recognized claims in the context of the Fourth Amendment (unreasonable seizure) and Fifth Amendment (gender discrimination).

involving federal prisoners asserting Eighth Amendment claims based on purportedly harsh or abusive behavior from prison officials—including painful restraints—as new contexts for a *Bivens* remedy. *See Ball v. Streeval*, --- F. Supp. 3d ---, 2023 WL 1930003, at *4 (W.D. Va. Feb. 9, 2023) (finding new *Bivens* context presented where inmate alleged "that various defendants subjected him to cruel and unusual punishment in the form of beatings, threats, sexual assault, and painful restraints," including wearing alternative clothing); *Hood v. Bureau of Prisons*, 2023 WL 361872, at *10–11 (W.D. Va. Jan. 20, 2023) (finding new context presented where federal inmate plaintiff alleged Eighth Amendment violations based on "cruel and unusual punishment in the form of beatings, torture, threats, and painful restraints, and that other defendants failed to intervene."); *Jean v. Smallwood*, 2022 WL 17969091, at *2, *5 (W.D. Va. Dec. 27, 2022) (noting in case where Plaintiff alleged, *inter alia*, being improperly restrained and beaten, that "the Supreme Court has never ruled that a damages remedy exists for claims of excessive force by BOP officers against an inmate").

As in those cases, here Plaintiff's claim of being tortured while restrained bears little resemblance to the plaintiff's fatal struggle to obtain proper medical treatment in *Carlson*. Accordingly, Plaintiff's likely Eighth Amendment claim presents a new context for a *Bivens* remedy.

## B. Special Factors Counsel Against Implying New Bivens Claims Here.

Given that Plaintiff's claim presents a "new context" for a *Bivens* remedy, the Court must move to the second step and consider whether there are special factors

14

counselling hesitation to permit Plaintiff to proceed on those claims. *See Abbasi*, 137 S. Ct. at 1857–60; *Annappareddy*, 996 F.3d at 133. Multiple special factors are present here.

"Special factors" exist in this context that implicate the very separation-of-powers concerns that animated the *Abbasi* holding and should preclude the creation of a new *Bivens* remedy. As the Supreme Court has recognized, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safely*, 482 U.S. 78, 84–85 (1987). Because of this difficulty, "courts have long been committed to avoiding judicial intervention in the running of prisons or in matters of security within prisons." *Jean*, 2022 WL 17969091, at *6; *see also Matheny v. Sellers*, 2023 WL 4162283, at *5 (W.D. Va. June 23, 2023) ("Courts have recognized that 'the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily does not interfere.'" (quoting *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980)). Here, Plaintiff asks the Court to insert itself—in the guise of a disfavored individual capacity implied right of action—in routine prison discipline and safety issues such as how to secure and outfit inmates during cell and visual searches, as well as pending health assessments. Not only does such a request open a can of worms to a potential flood of new litigants, but it also puts the Court squarely in the position of overseeing how federal prisons are run and maintained.

Finally, "'legislative action suggesting that Congress does not want a damages

remedy" also counsels hesitation in recognizing a cause of action under Bivens.'" *Matheny*, 2023 WL 4162283, at *5 (quoting *Abbasi*, 582 U.S. at 148). Here, "Congress specifically created an alternative process for prisoners to address grievances when it passed the [PLRA] . . . to limit prisoner litigation." *Scates v. Craddock*, 2019 WL 6462846, at *7 (N.D.W. Va. July 26, 2019) (citations omitted), *adopted*, 2019 WL 4200862 (N.D.W. Va. Sept. 5, 2019). As the Supreme Court held in *Abbasi*, the PLRA makes "clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." 582 U.S. at 148.

These special factors—each alone and combined—counsel against creating a *Bivens* remedy in the new contexts raised Plaintiff. As such, Plaintiff's Amended Complaint merits dismissal.

## V.    Defendants are Entitled to Qualified Immunity.

If this Court nonetheless elects to create a new *Bivens* remedy, Defendants[5] officials would still be entitled to qualified immunity, and thus Plaintiff's claim should be dismissed on this alternative basis.

The Supreme Court has repeatedly held that officials enjoy qualified immunity from suit unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). The doctrine of qualified immunity recognizes that subjecting public

---

[5] As explained above, the undersigned counsel is currently only authorized to bring this motion on behalf of Defendants Greene, Williams, and Cross. Because Heck is a former employee who has not yet been served, the undersigned has not yet obtained authority to represent Defendant Heck.

officials to personal liability for their discretionary actions distracts those officials from their public duties, inhibits their actions, and may deter qualified people from accepting public service. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity is both a defense to liability and an "entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is generally governed by a two-pronged analytical framework. First, one asks whether the facts, viewed in the light most favorable to the plaintiff, establish a violation of a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, it must be determined whether the constitutional right was clearly established at the time the alleged conduct occurred, such that a reasonable official would understand that what he was doing violated that right. *Pike v. Osbourne*, 301 F.3d 182, 184-85 (4th Cir. 2002). A court need not address those prongs in any particular order, and the resolution of either prong in a defendant's favor compels a finding of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### A.    Use of Force While on Restraints.

Plaintiff does not make any specific allegations about any specific acts of any individual defendant, rather, Plaintiff simply alleges that he was "tortured" by the

Defendants while he was on a "restraint chair and on 4 points." Amend. Compl. at 4. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quotation omitted). Eighth Amendment claims have both an objective, and subjective component. *Id.* Specifically, an analysis of whether there is a valid Eighth Amendment claim requires an inquiry into whether: (1) "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)"; and (2) "whether the prison official acted with a sufficiently culpable state of mind (subjective component)." *Id.*

For the objective component, "[a]n injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it rises above the level of de minimus harm." *Id.* The objective component "is always satisfied '[w]hen prison officials maliciously and sadistically use force to cause harm.'" *Worley v. Ewing*, 2021 WL 951704, at *6 (S.D. W. Va. Mar. 12, 2021) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

For excessive force claims (as Plaintiff alleges here), the subjective component is evaluated with four factors: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

### i. Plaintiff Has Not Pled a Plausible Constitutional Violation.

Plaintiff has failed to state an Eighth Amendment violation by Lieutenant Greene or Cross or Dr. Williams.

Although he provides no specifics of any acts by any individual defendant, Plaintiff generally alleges that Defendants "tortured" on a "restraint chair and on 4 points," such that he suffered "serious medical and mental health damages along with permanent disability[.]" Amend. Compl. at 4.

Plaintiff's allegations do not plausibly allege the objective component of the Eighth Amendment analysis. Plaintiff does not allege any facts about what "torture" he experienced or which defendant, and at which time, hurt him, which is insufficient even to state a constitutional claim against any individual defendant. *See Iqbal*, 556 U.S. at 684. Furthermore, Plaintiff does not describe in any detail the nature of the medical and mental health damages he allegedly sustained, the nature of his permanent disability, or how he sustained these injuries.

Additionally, the Amended Complaint fails to allege the subjective component. Plaintiff never alleges any context for the use of force he experienced. Plaintiff does not allege whether the force was necessary, how long he was restrained, what amount of force was used, why force was used, or whether Defendants Greene, Williams and Cross made any efforts to temper the severity of the force. On the face of his Amended Complaint, Plaintiff has not plausibly alleged an Eighth Amendment violation.

19

### *ii. The Alleged Right Was Not Clearly Established.*

Even assuming Plaintiff plausibly stated an Eighth Amendment violation, which he has not, the right at issue was not clearly established at the time of the events giving rise to Plaintiff's claims. In cases within the Fourth Circuit where the court found an Eighth Amendment violation (or determined that plaintiff sufficiently alleged such a violation) based on a prisoner's restraint, the conduct at issue is strikingly different than as alleged here. And in those situations in which the constitutional analysis is largely based on an officer's reaction to events occurring around them—as with the Eighth Amendment's excessive force jurisprudence—it is important to recall that this Court cannot view the circumstances with the benefit of hindsight; indeed, as the Fourth Circuit has held, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

For example, in many of those cases, the inmate was restrained for an extremely long period of time, often in humiliating or degrading conditions. *See Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002) (restraining inmate to a hitching post in the sun for seven hours violated was an "obvious" Eighth Amendment violation); *Williams v. Benjamin*, 77 F.3d 756, (4th Cir. 1996) (keeping inmate in four-point restraints, chained to his bed, for eight hours after being maced, without use of the toilet or any medical attention, was clear Eighth Amendment violation); *Randolph v. Potter*, 2017 WL 3158775, at *3 (D. Md. July 21, 2017) ("Randolph's allegation that he was placed in restraints, shackles, and handcuffs for nearly seven hours and then

20

he passed out is sufficient to state a plausible claim of excessive force."); *Bount v. Miller*, 2015 WL 1505772, at *3 (W.D. Va. Mar. 31, 2015) (keeping inmate in chains too short to allow him to stand for eighteen hours precluded qualified immunity on Eighth Amendment claim).

Some courts have found a clearly established right when the inmate was subject to physical violence or abuse (outside of the reasonable bounds of maintaining inmate safety or discipline) while restrained. *See Worley*, 2021 WL 951704, at *7 (finding no qualified immunity for officers who slammed restrained inmate into the ground because "it was clearly established that an officer may not use unnecessary physical force against a restrained inmate who is compliant and not resisting"); *Steepleton v. Greene*, 2020 WL 402236, at *2 (W.D.N.C. Jan. 23, 2020) ("Plaintiff's allegations that [officer] slammed him into the wall then onto the floor and hit his face while Plaintiff was handcuffed and did nothing to warrant the use of force are sufficient to state a claim of excessive force.").

Here, Plaintiff has not alleged enough facts to determine how long he was restrained on four points, what, if any, acts that any individual defendant took toward him, why he was restrained, what happened while he was restrained, or whether what he conclusively terms *torture* constituted the type of force that rises to the level previously recognized as an Eight Amendment violation. As such, Defendants Greene, Williams and Cross are entitled to qualified immunity.

## **CONCLUSION**

For the foregoing reasons, Defendants FCI Petersburg, Williams, Greene, and

Cross respectfully request that the Court grant their motion to dismiss as to all of Plaintiff's claims.

Dated: August 14, 2025                    Respectfully submitted,

                                          ERIK S. SIEBERT
                                          UNITED STATES ATTORNEY

                                          By:_____/s/_____
                                             Raul A. Ruiz
                                             Assistant United States Attorney
                                             Office of the United States Attorney
                                             Justin W. Williams U.S. Attorney's
                                             Building
                                             2100 Jamieson Avenue
                                             Alexandria, Virginia 22314
                                             Tel:    (703) 299-3853
                                             Fax:   (703) 299-3983
                                             raul.ruiz@usdoj.gov

                                          *Counsel for Defendants*

22

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 14, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and caused a copy to be served by first-class mail on the following *pro se* plaintiff:

**Tarik Jaafar**
1726 N Troy St.
Arlington, VA 22201
571-867-6660
molenmarcel4@gmail.com

Dated: August 14, 2025

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

*By:*_____/s/_____
    Raul A. Ruiz
    Assistant United States Attorney
    Office of the United States Attorney
    Justin W. Williams U.S. Attorney's
    Building
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    Tel:    (703) 299-3853
    Fax:   (703) 299-3983
    raul.ruiz@usdoj.gov

    *Counsel for Defendants*